# In the United States Court of Federal Claims

No. 18-861C
(E-Filed:  July 26, 2018)[1]

| | |
|---|---|
| CHENEGA HEALTHCARE SERVICES, LLC, | ) )  ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) ) |
| Defendant, | ) ) ) |
| and | ) ) |
| KUPONO GOVERNMENT SERVICES, LLC, | ) ) ) ) |
| Intervenor-Defendant. | ) ) ) |

Post-Award Bid Protest; Review of
Proposal Evaluation; Late Key
Personnel Substitution; Award
Without Discussions; Preliminary
Injunction Request Denied.

Kevin A. Rosenfield, Seattle, WA, for plaintiff.  Mark G. Jackson and Stowell Holcomb,
Seattle, WA, of counsel.

Agatha Koprowski, Trial Attorney, with whom were Chad A. Readler, Acting Assistant
Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant
Director, Commercial Litigation Branch, Civil Division, United States Department of
Justice, Washington, DC, for defendant.  Ada Mitrani, United States Department of
Energy, of counsel.

---

[1]     This opinion was issued under seal on July 13, 2018.  Pursuant to ¶ 4 of the
ordering language, the parties were invited to identify source selection, proprietary or
confidential material subject to deletion on the basis that the material was
protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and
public versions of this opinion are identical, except for the publication date and this
footnote.

Damien C. Specht, McLean, VA, for intervenor-defendant.  James A. Tucker and
R. Locke Bell, McLean, VA, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

This post-award bid protest is before the court on plaintiff's motion for a
preliminary injunction, ECF No. 4, and defendant's motion to dismiss, ECF No. 31.  The
court has reviewed plaintiff's appendix, ECF No. 3-1, plaintiff's memorandum, ECF No.
5, defendant's supplemental appendix, ECF No. 26-2, intervenor-defendant's response
brief, ECF No. 30, defendant's opposition brief and motion to dismiss, ECF No. 31,
plaintiff's amended complaint, ECF No. 34, and plaintiff's response/reply, ECF No. 35.[2]
Oral argument was deemed unnecessary.  See ECF No. 36.  For the reasons set forth
below, plaintiff's motion for preliminary injunction is **DENIED** and defendant's motion
to dismiss is also **DENIED**.

I.      Background

        A.      Solicitation

        The procuring agency here is the United States Department of Energy (DOE).  The
competition that underlies this protest is for a range of support services at DOE's "Office
of Enterprise Assessment's National Training Center (NTC) located on Kirtland Air
Force Base in Albuquerque, New Mexico."  ECF No. 3-1 at 65.  Services include
"developing, providing and supporting security and safety classroom and on-line training
at the NTC and other locations, managing training programs, providing cyber-security
and information technology support for the NTC as well as at DOE headquarters in
Washington, D.C., and maintaining facilities and grounds."  Id. at 65-66.  The solicitation
for this five-year Indefinite Delivery Indefinite Quantity (IDIQ) contract issued on June
23, 2017, id. at 65, with a closing date for receipt of proposals of August 16, 2017, id. at
76.

        Any attempted modification of a proposal received after August 16, 2017, would
be deemed "late" and would not be considered by DOE.  Id. at 79.  DOE informed the
offerors that the agency intended to award the contract without discussions.  Id. at 80.
For this protest, the most pertinent evaluation criteria were the resume and letter of
commitment that each offeror would include to identify the person who would serve as
General Manager for the services performed under the contract.  Id. at 85.  Notably,
offerors were informed that

---

[2]      Defendant's motion to dismiss is discussed at the end of this opinion.

> FAILURE TO SUBMIT A LETTER OF COMMITMENT [from the person to serve as General Manager] MAY RESULT IN THE OFFEROR'S PROPOSAL BEING ELIMINATED FROM FURTHER CONSIDERATION FOR AWARD FOR FAILURE TO SUBMIT A RESPONSIVE, COMPLETE AND ACCEPTABLE PROPOSAL.

Id. (emphasis in original).

B.      Offerors

Five offerors responded to the solicitation.  ECF No. 3-1 at 153.  Among the offerors were plaintiff, Chenega Healthcare Services, LLC (Chenega or CHS), and Kupono Government Services, LLC (Kupono), the intervenor-defendant in this suit. Kupono's proposal was selected for award.

Chenega's "sister companies," other wholly-owned subsidiaries of Chenega Corporation, had performed on predecessor contracts at NTC for some years.  ECF No. 5 at 9.  Indeed, one of these sister companies is the incumbent contractor at NTC.  Id. When Chenega submitted its offer for this procurement, it proposed that Mr. Mark Russell -- the General Manager who was serving in that capacity for the incumbent contractor at the time -- continue in that role, and included Mr. Russell's resume and letter of commitment in its proposal.  Id. at 10; ECF No. 3-1 at 153.

C.      Chenega Informs DOE that Mr. Russell Cannot Commit to the Contract

While the agency was considering the five proposals it had received, Mr. Russell informed Chenega that he could no longer commit to being Chenega's General Manager for the follow-on contract, nor could he continue as General Manager on the incumbent contract, due to health and personal concerns.  ECF No. 3-1 at 159.  Chenega's sister company informed DOE that it needed to replace Mr. Russell on the incumbent contract, and Chenega informed DOE that it would need to replace Mr. Russell in the proposal under consideration.  Id. at 159-60.  Mr. Mark Miller was substituted as General Manager on the incumbent contract, and Chenega informed DOE that Mr. Miller would replace Mr. Russell in its proposal, as well.  Id.  The personnel contacted at DOE noted the proposed General Manager substitution in Chenega's offer but did not confirm that the substitution was accepted by DOE.  Id. at 160.

D.      DOE Rates Chenega's Proposal as Unsatisfactory and Awards the Contract
        to Kupono

DOE subsequently inquired of Chenega whether Mr. Russell's commitment letter was still valid for Chenega's proposal, but did not permit Chenega to provide any other information.  Id. at 97.  Chenega confirmed that Mr. Russell's letter of commitment was

no longer valid. ECF No. 5 at 12. Although Chenega's offer and Kupono's offer received similar ratings for most of the non-price aspects of their proposals, the lack of a valid letter of commitment from a General Manager rendered Chenega's technical approach unsatisfactory. ECF No. 3-1 at 122, 144. Even though Chenega offered a lower price, the technical approach factor, which was the "most important criteria," weighed heavily against Chenega, and DOE concluded that Kupono offered the best value to the agency. Id. at 149-50.

E.      Prior Protest

At least two protest grounds in this suit were raised by Chenega before the Government Accountability Office (GAO). The focus of that protest was on DOE's refusal to consider the replacement General Manager, Mr. Mark Miller, as a component of Chenega's proposal, either through the agency's knowledge of Mr. Miller and his proposed role in Chenega's offer once Mr. Russell became ill, or through entering into discussions with Chenega so that its proposal could be modified to include Mr. Miller's resume and letter of commitment. ECF No. 3-1 at 152-57. The GAO, however, found that DOE was not obligated to consider the proposed substitution -- of Mr. Miller for Mr. Russell -- that had been communicated by Chenega to DOE staffers. Id. Nor was DOE obliged to enter into discussions with Chenega regarding the proposed substitution. Id. Chenega's GAO protest was denied, and this suit followed.

II.     Legal Standards

A.      Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]: a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)). Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure. Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)). "The arbitrary and capricious standard applicable [in bid protests] is highly deferential." Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief. Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v. United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)). The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question.

Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)).
Examples of arbitrary and capricious agency action include "when the agency 'entirely
failed to consider an important aspect of the problem, offered an explanation for its
decision that runs counter to the evidence before the agency, or [the decision] is so
implausible that it could not be ascribed to a difference in view or the product of agency
expertise.'" Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375
(Fed. Cir. 2009) (Alabama Aircraft) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm
Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will,
however, "uphold a decision of less than ideal clarity if the agency's path may reasonably
be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281,
286 (1974) (citation omitted).

"'If the court finds a reasonable basis for the agency's action, the court should stay
its hand even though it might, as an original proposition, have reached a different
conclusion as to the proper administration and application of the procurement
regulations.'" Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989)
(quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

      B.     Injunctive Relief

As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a
> court considers:  (1) whether, as it must, the plaintiff has
> succeeded on the merits of the case; (2) whether the plaintiff
> will suffer irreparable harm if the court withholds injunctive
> relief; (3) whether the balance of hardships to the respective
> parties favors the grant of injunctive relief; and (4) whether it
> is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco
Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).  The standard for a
preliminary injunction is the same, except that likelihood of success on the merits --
instead of actual success on the merits -- must be shown by the plaintiff. Id. at 1229.

III.    Analysis

There are five issues timely presented by plaintiff for the court's consideration.
The memorandum, with its list of questions presented, provides a good introduction to
plaintiff's protest grounds:

> 1.     Whether DOE was required to consider certain 'close at
> hand' information during its evaluation of CHS's proposal?

2. Whether, even if not required to consider such information, DOE abused its discretion in failing to do so during its evaluation of CHS's proposal?

3. Whether DOE abused its discretion in not holding discussions with CHS concerning the identity and qualifications of the replacement general manager?

4. Whether, in failing to consider 'close at hand information' or hold discussions with CHS, DOE contravened the 'best value' requirement of the procurement?

5. Whether DOE neglected to provide a 'reasoned explanation' for its decisions not to consider 'close at hand' information or hold discussions with CHS, as required by this Court?

ECF No. 5 at 8-9. To address plaintiff's questions, the court reviews four aspects of the agency's award decision.

First, the court reviews the propriety of the agency's decision to restrict its consideration of Chenega's proposal to the documents submitted on August 16, 2017, as clarified by Chenega's admission that the proposal no longer contained a valid commitment letter from Mr. Russell. The court reviews this aspect of the agency's award under the arbitrary and capricious standard. Second, the court reviews the agency's decision to award without discussions, again under the arbitrary and capricious standard. Third, the court considers whether the agency's best value decision was arbitrary or capricious. Fourth, the court will determine whether DOE provided a rational explanation of its award decision.[3]

A. Evaluation of Chenega's Proposal as Submitted and Clarified

The court does not agree with plaintiff that DOE was required to modify Chenega's proposal to reflect the proposed substitution of Mr. Miller for Mr. Russell as General Manager. The solicitation terms did not allow for late proposal modifications of this type. ECF No. 3-1 at 79-80. If the agency violated the terms of the solicitation in order to accommodate Chenega's circumstances, the agency's decision would fail to survive review in this court or at the GAO. The agency also could not favor one offeror with a proposal modification without affording a similar opportunity to all offerors. Cf.,

---

[3] The court observes that this challenge to the award decision, presented in Count IV of the amended complaint, seeks a remand to the agency for further explanation and/or a re-evaluation of Chenega's proposal. See ECF No. 34 at 12.

e.g., 48 C.F.R. § 15.306(d)(1) (2017) (discussions to permit proposal modifications must be held with all offerors in the competitive range); 48 C.F.R. § 15.306(e) (2017) (stating that the contracting officer "shall not engage in conduct that . . . [f]avors one offeror over another"). Thus, plaintiff's hypothesis, that the agency was obliged to take into account the information that Mr. Russell was not able to perform as General Manager and that Mr. Miller was offered by Chenega as a substitute, is simply not in accordance with either the terms of the solicitation or the fairness principles enshrined in the Federal Acquisition Regulation (FAR).

Plaintiff's alternative hypothesis, that DOE abused its discretion by not considering Mr. Miller as a substitute for Mr. Russell is similarly foreclosed by the terms of the solicitation and by the FAR. DOE, in the court's view, had no discretion to modify Chenega's proposal in this fashion after the proposal was submitted in August 2017, because the terms of the solicitation barred consideration of late modifications. ECF No. 3-1 at 79-80. DOE cannot abuse a discretion that it does not possess in the first place.

Although plaintiff disagrees, and argues that DOE was not bound by the language of the solicitation, ECF No. 35 at 21, there is ample authority to the contrary. See, e.g., Argencord Mach. & Equip., Inc. v. United States, 68 Fed. Cl. 167, 173 (2005) (noting that bans on late proposal submissions, which are present both in the FAR and in solicitations, serve the purpose of promoting equal treatment of offerors) (citations omitted); Conscoop-Consorzia Fra Coop. Di Prod. E Lavoro v. United States, 62 Fed. Cl. 219, 229 (2004) (holding that solicitation language controls for determining whether a proposal was properly submitted), aff'd, 159 F. App'x 184 (Fed. Cir. 2005). Indeed, this court, considering a similar ban on late proposal modifications, upheld an agency's decision to not accept a late modification of key personnel submitted by an offeror. See Masai Techs. Corp. v. United States, 79 Fed. Cl. 433, 444-45 (2007) (holding that an agency's decision to not consider late personnel substitutions was proper, and that such a modification of key personnel by the agency was not permitted by the relevant clause in the solicitation); see also Dubinsky v. United States, 43 Fed. Cl. 243, 265-66 & nn.52, 55 (1999) (noting the impropriety of accepting late proposal revisions to improve an unacceptable proposal, because such conduct violates fundamental fairness requirements in the FAR). The court finds no abuse of discretion in DOE's observance of the late modifications rule in the solicitation.

Turning to the "too close at hand" doctrine, which, in some scenarios, obliges an agency to consider information that was not included in a proposal but which is known to the agency's evaluators, the court must agree with the GAO that Chenega's circumstance does not fall within the bounds of the doctrine. To quote the GAO, "[w]e decline to make such a sweeping change in the applicability of this line of decisions to effectively obligate an agency to allow a protester to amend a technically deficient proposal." Chenega Healthcare Servs., LLC, B-416158, 2018 CPD ¶ 200, 2018 WL 3047041, at *4 (Comp. Gen. June 4, 2018) (CHS). Indeed, Chenega has failed to cite to a single GAO

decision, or to a case decided by this court, that extends the "too close at hand" doctrine to the substitution of key personnel listed in a proposal.

In at least one instance, moreover, this court has refused to extend the "too close at hand" doctrine to the evaluation of technical proposals. See Career Training Concepts, Inc. v. United States, 83 Fed. Cl. 215, 232 (2008) (finding no merit in the protestor's complaint that the agency should have considered extra-proposal information when conducting its evaluation of the protestor's technical/management proposal). The court agrees with the analysis presented by the GAO on this issue in the CHS decision, and adopts it here. The agency's decision to evaluate Chenega's proposal, an evaluation founded on the documents submitted by Chenega and on the clarification later provided by Chenega, survives review under the arbitrary and capricious standard.

B.      Award without Discussions

As the GAO stated, when an offeror is obliged to make a change in the key personnel included in its proposal, the agency has a choice between evaluating the original proposal as submitted, or opening discussions to allow for modified proposals. See CHS, 2018 WL 3047041, at *3 n.2 ("When the agency is notified of the withdrawal of a key person, it has two options:  either evaluate the proposal as submitted, where the proposal would be rejected as technically unacceptable for failing to meet a material requirement, or open discussions to permit the offeror to amend its proposal.") (citing Gen. Revenue Corp., B-414220.2, 2017 CPD ¶ 106, 2017 WL 2130370, at *17  (Comp. Gen. Mar. 27, 2017)). Chenega suggests that it is bad policy to allow an agency to evaluate a proposal, as submitted, when the proposal contains an obviously invalid key personnel commitment. ECF No. 5 at 25-27. This court, however, does not review procurement policy, it reviews award decisions under the arbitrary and capricious standard of review. This is a highly deferential standard of review. Advanced Data Concepts, 216 F.3d at 1058.

Here, where the agency informed offerors that DOE intended to award without discussions, any post-submission key personnel change ran the risk of rendering the offeror's proposal unacceptable, with no opportunity to cure the defect during discussions. Indeed, the solicitation contained an explicit warning that the letter of commitment from the proposed General Manager was necessary and material, and that elimination from consideration was possible in the absence of such a letter. ECF No. 3-1 at 85. The agency thus possessed the discretion to award without discussions in precisely the scenario that Chenega encountered, and the court finds no abuse of discretion in the agency's decision to complete its evaluation of proposals without entering into a round of discussions with the offerors. Further, in the court's view, although DOE could have proceeded differently, its decision to award without discussions was neither arbitrary nor capricious.

The GAO's analysis of DOE's decision to award without discussions, notwithstanding the proposed substitution of Mr. Miller for Mr. Russell, is persuasive. See CHS, 2018 WL 3047041, at *5.  First, the GAO noted that the solicitation stated DOE's intent to award without discussions, and that "a contracting officer's discretion in deciding not to hold discussions is quite broad."  Id. (citation omitted).  Second, the GAO observed that there are no specific statutory or regulatory constraints on the agency's discretion to not hold discussions.  Id. (citations omitted).  Third, the GAO observed that there is no requirement that an agency engage in discussions with a "technically unacceptable offeror," such as Chenega.  Id. (citation omitted).  On this basis, the GAO found no reason to sustain Chenega's protest which challenged DOE's decision not to enter into discussions with the offerors in this procurement.  Id.

The court must agree with the GAO's analysis.  Contracting officers generally have broad discretion regarding whether or not to engage in discussions with offerors before award.  See, e.g., Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1327-29 (Fed. Cir. 2011) (Allied) (holding that solicitation language indicating that any discussions would be held at the discretion of the contracting officer signified that the agency was not required to engage in discussions before disqualifying the protestor's proposal).  Although the agency's discretion is not unlimited, see JWK Int'l Corp. v. United States, 279 F.3d 985, 988 (Fed. Cir. 2002) (stating that a contracting officer possesses discretion to not conduct discussions unless there is evidence in the record of bad faith or an abuse of discretion) (citation omitted), DOE's conduct here falls well within a reasonable exercise of discretion.[4]

The general rule is that once offerors are warned that the agency intends to award without discussions, absent special circumstances, the contracting officer has the discretion to award without discussions.  See, e.g., Rig Masters, Inc. v. United States, 70 Fed. Cl. 413, 422 (2006) (noting that Day & Zimmermann Services v. United States, 38 Fed. Cl. 591, 604 (1997), was an unusual case where other flaws in the procurement rendered the contracting officer's decision not to engage in discussions an improper one).  Here, there are no special circumstances or identified flaws in the agency's evaluation of

---

[4]     In its reply brief, plaintiff asserts that proposal revisions, after discussions, would have resulted in the "near certainty" of higher technical ratings for Chenega's proposal than those assigned to Kupono's proposal.  ECF No. 35 at 17-18, 20 n.4.  The opening of discussions, however, does not guarantee that proposals would remain the same except for the General Manager substitution desired by Chenega.  Additional revisions by the offerors could alter the agency's best value determination.  See, e.g., Centerra Grp., LLC v. United States, No. 18-219C, 2018 WL 2731236, at *13 (Fed. Cl. June 7, 2018) (noting that a "wider range of potential outcomes" is possible if discussions are held with offerors, unlike "other types of [corrective action which] would produce clearly measurable changes in the rating of a protestor's proposal").

proposals. Instead, Chenega had to abandon its reliance on the General Manager it had originally proposed to the agency. In these not unusual circumstances, DOE acted within its discretion to award without discussions. Chenega's protest cannot be sustained on this ground, because DOE's award without discussions was neither arbitrary nor capricious, and did not constitute an abuse of discretion.

C.       Best Value Determination

Plaintiff's argument concerning the agency's best value determination generally asserts that the agency's evaluation of Chenega's unmodified proposal, which did not consider Mr. Miller as a substitute for Mr. Russell, deprived DOE of an opportunity to obtain the proposal providing the best value to the agency. This argument was not separately presented in the amended complaint, nor was it included as a separate outline item in the table of contents of plaintiff's memorandum. Instead, it is a thread of argument that is raised in support of Chenaga's other challenges to the propriety of the agency's conduct, where no late modification of Chenaga's proposal was implemented by DOE, and no discussions with Chenega and the other offerors were initiated by DOE. See ECF No. 5 at 21, 23, 27, 37. Plaintiff cites no decisions of this court or of the GAO in support of its "best value" argument.

Plaintiff's opening brief could be read to contend that an agency, to obtain the maximum number of advantageous offers from which it may choose the best value proposal, should bend the procurement rules to accommodate an offeror in Chenega's circumstances. That is not the law. The best value evaluation procedure set forth in the solicitation contains no instruction that late modification provisions and the fairness provisions of the FAR should be overridden in order to improve proposals which are unsatisfactory. See ECF No. 3-1 at 82. Instead, the solicitation sets forth a specific evaluation scheme which provides the elements to be weighed by the agency in its best value determination. Id. Here, the agency followed that procedure and rationally determined that Chenega's unsatisfactory technical approach prevented Chenega's proposal from providing the best value proposal to DOE. Id. at 148-50. DOE's best value award was thus rational and proper under the procurement laws. See, e.g., FirstLine Transp. Sec., Inc. v. United States, 100 Fed. Cl. 359, 388 (2011) ("It is a fundamental principle of procurement law tha[t] an agency must conduct its best-value analysis using the evaluation factors and subfactors specified in the solicitation.") (citations omitted).

In addition, plaintiff argues that DOE's award without discussions was an abuse of discretion because it eliminated Chenega's opportunity to present a proposal with a satisfactory commitment from a General Manager, and thus eliminated DOE's opportunity to choose a "best value" proposal from Chenega.[5] ECF No. 5 at 27. The

_____

[5]       Defendant contends that this argument is waived because the solicitation warned offerors that award without discussions was anticipated by the agency. ECF No. 31 at 19

court notes, first, that contracting officers exercise broad discretion in deciding which proposal provides the best value in a best value procurement.  See, e.g., Banknote, 365 F.3d at 1355-56 ("It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value.") (citations omitted).  If the best value determination is grounded in reason, the court will defer to the agency's discretion in making its best value determination.  E.g., Grumman Data, 88 F.3d at 995 (citing Widnall v. B3H Corp., 75 F.3d 1577, 1580 (Fed. Cir. 1996)).

Second, the court has found no authority that suggests that a best value procurement necessarily comprises a preliminary step of rehabilitating unsatisfactory proposals to increase the pool of satisfactory proposals which might potentially prove to provide the best value to the agency.  Indeed, the overwhelming weight of authority indicates that a contracting officer's discretion to not open discussions generally trumps a protestor's argument that the agency should have opened discussions to rehabilitate unsatisfactory proposals before making a best value contract award.  See, e.g., Allied, 649 F.3d at 1327-29 (holding that the contracting officer's discretion to not open discussions with the protestor was sufficient to withstand review in that case); DynCorp Int'l LLC v. United States, 76 Fed. Cl. 528, 539-40 (2007) (stating that "'an agency is not precluded from awarding on an initial proposal basis merely because an unacceptable lower offer could be made acceptable through discussions'" (quoting Century Elevator Inc., B-283822, 99-2 CPD ¶ 112, 1999 WL 1243117 (Comp. Gen. Dec. 20, 1999))).  This discretion to not conduct discussions is properly exercised even, in some circumstances, where there is only one other offeror in the competition, and the agency does nothing to improve the second, unsatisfactory proposal through discussions before making a best value award.  Dyncorp, 76 Fed. Cl. at 540.  In the court's view, that general rule applies in this case, where an unfortunate circumstance rendered Chenega's technical approach

---

(citing Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007)).  This type of waiver argument has been rejected by the GAO and must be rejected here as well.  See Sci. Applications Int'l Corp., B-413501, B-413501.2, 2016 CPD ¶ 328, 2016 WL 6892429, at *8 n.8  (Comp. Gen. Nov. 9, 2016) (stating that when the agency reserved the right to conduct discussions, the protestor "was not required to raise its claim until it became evident that the agency had, in fact, decided to not conduct discussions").  Kupono makes a similar waiver argument, relying on XPO Logistics Worldwide Government Services, LLC v. United States, 134 Fed. Cl. 783 (2017), aff'd, 713 F. App'x 1008 (Fed. Cir. 2018).  ECF No. 30 at 15-16 & n.3.  XPO is distinguishable, however, because in that case the protestor was explicitly informed that no discussions would be held before award, 134 Fed. Cl. at 799, whereas here Chenega received no such warning.  Under the circumstances, the court sees no waiver of a challenge to the agency's decision not to conduct discussions with Chenega and the other offerors.

unsatisfactory, and Kupono's proposal, which had a higher price than Chenega's proposal, provided best value among the proposals evaluated by the agency.

In essence, plaintiff's challenge to the agency's best value decision asks the court to supplement the evaluation scheme set forth in the solicitation with a further requirement that the agency open discussions when an offeror's candidate for the General Manager position retracts its commitment to the proposed contract. This particular procedure is not set forth in the solicitation, and the court has found no support for this requirement in the FAR or precedent from this court or the GAO. Indeed, this court has been cautioned to not require that a procuring agency supplement its evaluation procedures with additional requirements that have not been announced to the offerors. See Alabama Aircraft, 586 F.3d at 1376 (noting that this court should not "introduce new requirements outside the scope of the RFP," because this would exceed "the court's scope of review" in a bid protest). The court concludes that DOE's best value determination conformed with the solicitation and established caselaw, was grounded in reason, and did not constitute an abuse of discretion.

As Kupono notes, if plaintiff's view of the law were to prevail "agencies then would be forced to engage in the time-consuming, complicated, and resource-intensive process of conducting discussions with all offerors and evaluating proposal revisions every time one offeror has a key person . . . become unavailable at any time prior to contract award (no matter where the Agency is in the evaluation process or how soon award is to be made)." ECF No. 30 at 16-17. The court does not believe that plaintiff's approach adequately reflects this court's deference to the contracting officer's discretion in conducting a best value procurement. See, e.g., Rig Masters, 70 Fed. Cl. at 420-22 (noting that FAR provisions do not require that discussions be held before a best value award can occur) (citing 48 C.F.R. § 15.303(b)(6) (2017) and 48 C.F.R. § 15.306(a)(3) (2017)). Although there might be circumstances where a failure to conduct discussions constitutes an abuse of discretion, the court does not find any reason why DOE could not rationally and properly choose to make its best value award without discussions here.

D.    Adequate Explanation of Agency's Award Rationale

Plaintiff asserts that DOE was required to "provide a coherent and reasonable explanation of its exercise of discretion" in making the contract award, and that the agency failed to do so in this procurement. ECF No. 34 at 11 (citing Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009)). As the Federal Circuit has stated, the award decision must be documented and the rationale for the best value award must be included in that documentation:

> Federal Acquisitions Regulation 15.308 states "[t]he source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the [Source Selection

Authority], including benefits associated with additional costs." 48 C.F.R. § 15.308.

Croman Corp. v. United States, 724 F.3d 1357, 1365 (Fed. Cir. 2013). Although the need for a reasonable explanation of the agency's award decision is well-established in precedent, the court does not find that DOE's award decision, as explained by the documents referenced by the parties in this case, fails the arbitrary and capricious standard of review.

Plaintiff argues that DOE failed to explain why it did not use "too close at hand" information to modify Chenega's proposal to replace Mr. Russell with Mr. Miller, and also failed to explain why it chose to make an award without the discussions that would have permitted Chenega to modify its proposal in this regard, and concludes that a remand to the agency is proper. ECF No. 5 at 30-31. In other words, simply because the best value decision of the agency failed to explicitly discuss the "too close at hand" doctrine, and failed to address, in detail, why the agency opted to make its award, as expected, without discussions, plaintiff contends that a remand to DOE is required. Id. The court notes that plaintiff's argument, taken to extremes, would compel a remand in every bid protest where the agency's award decision fails to mention and address each and every protest ground later raised by the plaintiff. This is not the law.

Generally, the agency's decision-making process must provide a "rational basis" for the award. Croman, 724 F.3d at 1365. When documenting a best value rationale, the decision must show that the source selection authority considered "the type of detail that is warranted" by the circumstances of the procurement. Id. at 1367. Here, the agency properly considered the information before it in five proposals, and selected the best value proposal in accordance with the evaluation criteria set forth in the solicitation. DOE's rationale for making its best value decision is adequately documented, and shows that the agency did not stray from the evaluation factors set forth in the solicitation. Although plaintiff apparently would prefer that the agency specifically justify its decision to not conduct discussions, the court finds that DOE's award decision rationally explains the selection of Kupono's more expensive, satisfactory proposal over Chenega's less expensive, unsatisfactory proposal.

E.     Plaintiff's Alternative Protest Ground Is Waived and without Merit

Plaintiff raises an alternative protest ground in its amended complaint and reply brief, both filed July 9, 2018. See ECF No. 34 at 12-13; ECF No. 35 at 27-31. Although plaintiff continues to contend that DOE did not enter into discussions with Chenega, see ECF No. 34 at 6, plaintiff now contends, in the alternative, that discussions were held with all of the offerors and that these discussions were not meaningful, in contravention of the venerable principle that discussions held with offerors must be meaningful. See ECF No. 35 at 30 (quoting Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 124, 131 (2000)). This argument is waived and without merit.

13

The full extent of the communication between Chenega and DOE was that Chenega was required to confirm (or deny) that its letter of commitment from Mr. Russell was still valid, and confirm that Chenega was willing to extend the validity of its proposal by sixty days. ECF No. 26-2 at 313-15. Thus, the nature of the communication between DOE and Chenega was clear to Chenega in February 2018. Id. The agency specifically described these communications as clarifications which did not permit revisions to Chenega's proposal. Id.

Plaintiff did not contend that these clarifications were actually discussions, or that these alleged discussions were invalid because they were not meaningful, until plaintiff filed its amended complaint and reply brief at the close of the briefing of plaintiff's motion for a preliminary injunction on July 9, 2018. See ECF Nos. 34, 35. As such, plaintiff's argument in this regard is not properly before the court. See, e.g., Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (finding that a party waived an argument that was first presented to the trial judge in a reply brief). Although the nature of the communications that occurred with the other offerors in February 2018, when DOE made the same requests regarding key personnel commitments and sixty-day extensions of the validity of proposals, was not necessarily known to Chenega before it filed its bid protest complaint here, that knowledge, or lack of knowledge, is irrelevant. Chenega already knew that its communications with DOE were styled as clarifications, not discussions, and could have raised its "meaningful discussions" challenge to those communications in its opening motion filed June 18, 2018.[6] Because plaintiff did not timely raise this argument, it is waived. Novosteel, 284 F.3d at 1274.

Even if Chenega's "lack of meaningful discussions" challenge to the award to Kupono had been timely raised, it lacks merit. Requesting that offerors extend the validity of their proposals does not constitute discussions. See Enter. Servs., LLC, B-415368.2, 2018 CPD ¶ 44, 2018 WL 774278, at *17 & n.23 (Comp. Gen. Jan. 4, 2018) (stating that "requesting that an offeror verify its price or extend the acceptance period of its proposal does not, without more, constitute discussions") (citations omitted). Further, asking that offerors confirm the availability of key personnel and extend the validity of their proposals does not constitute discussions. See Equa Sols., Inc., B-409848.2,

---

[6]   Indeed, the only "discussions" that would be of concern to a protestor in these circumstances, where discussions are alleged to have not been meaningful, are the agency's discussions with the protestor which did not permit the protestor to revise its proposal in weak areas. Cf. Dynacs, 48 Fed. Cl. at 131 (noting that meaningful discussions permit an offeror to address proposal deficiencies in order to improve its chances of award) (citations omitted). Here, Chenega knew before filing its protest that it was not given a chance to revise its proposal regarding its choice of General Manager. Plaintiff possessed, therefore, all the information required to contest the meaningfulness of "discussions" between Chenega and DOE, and did not do so in its opening brief.

B-409848.3, 2014 CPD ¶ 354, 2014 WL 7015238, at *7 (Comp. Gen. Nov. 20, 2014) (finding that a solicitation amendment allowing the resubmission of key personnel resumes and an extension of the validity of proposals did not signify that the agency had entered into discussions with the offerors).  DOE did not enter into discussions with the offerors in this procurement; thus, plaintiff's challenge to the validity of "discussions" is inapplicable to these facts.

F.    Preliminary Injunctive Relief Not Warranted

Plaintiff has not shown likelihood of success on the merits of its protest.  This weighs heavily against the issuance of a preliminary injunction.  See, e.g., FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993) ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown.").  Indeed, the Federal Circuit has held that a failure to show likelihood of success on the merits is dispositive.  See Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (stating that "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits") (citation and footnote omitted).  The court briefly discusses the other injunctive relief factors.

The court does not see how the public interest would be served by delaying this procurement so that this court could re-examine an award decision that has survived a merits review at the GAO and a preliminary review in this forum.  See Wind Tower Trade Coal. v. United States, 741 F.3d 89, 101 (Fed. Cir. 2014) (agreeing with the lower court that "no strong public interest [in the issuance of a preliminary injunction] was demonstrated" in that case when the movant had failed to show likelihood of success on the merits).  Further, irreparable harm to plaintiff is not established because the protestor has not shown likelihood of success on the merits.  See Akal Sec., Inc. v. United States, 87 Fed. Cl. 311, 319-20 (2009) (stating that the "strength or weakness of [the protestor's] merits arguments largely determines the court's view of irreparable injury").

Finally, there is more harm to DOE and Kupono flowing from an injunction of contract performance than there is to plaintiff in the absence an injunction, where plaintiff has not shown likelihood of success on the merits.  DOE has already delayed its transition to a follow-on contract to accommodate Chenega's protests at the GAO and in this forum.  Although the parties hotly dispute whether the delays of Kupono's contract performance have had negative impacts on DOE and Kupono, see ECF Nos. 30-1, 31-1, 35-1 at 1-6, the court finds at least some of the alleged harmful impacts of procurement delays on DOE and Kupono to be credible.  Further delays of the transition would likely continue to impose at least some costs on the agency and Kupono, whether or not a bridge contract is currently fulfilling the agency's needs.

As for the harm to Chenega, an injunction during the pendency of the court's consideration of the merits of plaintiff's protest would buy plaintiff's sister company

additional weeks of contract performance before Kupono would likely, again, be confirmed as the actual follow-on contract awardee.  See ECF No. 3-1 at 160-61.  Thus, in the court's view, only very limited economic harm to plaintiff and its sister company could be avoided by the issuance of a preliminary injunction.  This harm is less severe than the harm that DOE and Kupono are likely to suffer while this second bid protest lodged by Chenega draws to a conclusion.  When all four of the injunctive relief factors are considered, plaintiff's request for a preliminary injunction must be **DENIED**.

        G.      Defendant's Motion to Dismiss

Defendant's motion to dismiss relies on materials submitted by the parties that are outside the pleadings.  ECF No. 31 at 17-18, 20-22.  Under Rules 12(b)(6) and 12(d) of the Rules of the United States Court of Federal Claims (RCFC), RCFC 12(b)(6) motions must be converted to summary judgment proceedings, under RCFC 56, should the court decide to consider materials outside the pleadings.  In this case, as in most bid protests, however, an administrative record will provide the basis for further proceedings, if required, under RCFC 52.1(c).  It would not be efficient to convert defendant's RCFC 12(b)(6) motion under these circumstances.  Because the court could not grant defendant's motion without considering materials outside the pleadings, and because summary judgment proceedings are not an efficient use of the court's and the parties' resources, defendant's motion to dismiss is **DENIED**.

IV.    Conclusion

Accordingly,

(1)    Plaintiff's motion for a preliminary injunction, ECF No. 4, is **DENIED**;

(2)    Defendant's motion to dismiss pursuant to RCFC 12(b)(6), ECF No. 31, is also **DENIED**;

(3)    On or before **July 27, 2018**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out; and,

(4)    On or before **July 27, 2018**, the parties shall **CONFER** and **FILE** a **Joint Status Report** proposing a schedule for further proceedings, if any, in this matter.

IT IS SO ORDERED.

17

s/Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Judge