# In the United States Court of Federal Claims

No. 18-861C

(E-Filed:  January 11, 2019)[1]

|  |  |  |
|---|---|---|
| CHENEGA HEALTHCARE SERVICES, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| THE UNITED STATES, | ) ) ) | Post-Award Bid Protest; Late Key Personnel Substitution; Award Without Discussions; Rationale for Award. |
| Defendant, | ) ) ) | |
| and | ) ) | |
| KUPONO GOVERNMENT SERVICES, LLC, | ) ) ) | |
| Intervenor-Defendant. | ) ) ) | |

<u>Kevin A. Rosenfield</u>, Seattle, WA, for plaintiff.  <u>Mark G. Jackson</u> and <u>Stowell Holcomb</u>, of counsel.

<u>Agatha Koprowski</u>, Trial Attorney, with whom were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Robert E. Kirschman, Jr.</u>, Director, <u>Douglas K. Mickle</u>, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  <u>Ada Mitrani</u>, United States Department of Energy, of counsel.

---

[1]     This opinion was issued under seal on December 21, 2018.  Pursuant to ¶ 5 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

<u>Damien C. Specht</u>, McLean, VA, for intervenor-defendant.  <u>James A. Tucker</u> and <u>R. Locke Bell</u>, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

This post-award bid protest is before the court on the parties' cross-motions for judgment on the administrative record (AR), brought pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC).  The court has reviewed the amended complaint, ECF No. 34; the AR, ECF No. 40; the supplement to the AR, ECF No. 49-1; plaintiff's memorandum in support of its motion for judgment on the AR, ECF No. 50-1; intervenor-defendant's cross-motion for judgment on the AR, ECF No. 52; defendant's cross-motion for judgment on the AR, ECF No. 53; plaintiff's response/reply brief, ECF No. 55; intervenor-defendant's reply brief, ECF No. 56, defendant's reply brief, ECF No. 57; and, the supplemental declaration of LeAnn Herren, ECF No. 62.[2] The parties suggested that oral argument be held at the discretion of the court, <u>see</u> ECF No. 46 at 2; oral argument was deemed unnecessary.  For the reasons set forth below, plaintiff's motion for judgment on the AR is **DENIED**, and defendant's and intervenor-defendant's cross-motions for judgment on the AR are **GRANTED**.

---

[2]     The court has not considered, however, the parties' arguments as to the <u>relevance</u> of the supplemental declaration of LeAnn Herren.  <u>See</u> ECF Nos. 59, 60, and 63.  The briefing of the parties' cross-motions for judgment on the AR concluded on October 15, 2018, pursuant to the schedule proposed by the parties and adopted by the court.  <u>See</u> ECF No. 47.  The briefing schedule proposed by the parties was sufficient to address the merits of this bid protest, and no party sought leave to file a sur-reply brief.

In light of the robust briefing filed in accordance with that schedule, the court will not expand its analysis to consider the arguments later presented by the parties in their advocacy for, or against, the court's consideration of the supplemental declaration of LeAnn Herren.  <u>See</u> ECF Nos. 59, 60, and 63.  The court agreed to consider that document, <u>not</u> to consider a supplemental round of briefing in support of the parties' cross-motions for judgment on the AR.  <u>See</u> Order of October 23, 2018, ECF No. 61 at 1 ("As the court considers the parties' motions for judgment on the administrative record, the court is willing to review the Supplemental Declaration of LeAnn Herren, as well.").  Each party, as agreed by the parties and the court, <u>see</u> ECF Nos. 46-47, was afforded two briefs on the dispositive motions before the court; a supplemental round of briefing would not be helpful.

I.      Background[3]

A.      Solicitation No. DE-SOL-0010843

The procuring agency here is the United States Department of Energy (DOE).  The competition that underlies this protest is for a range of support services at the DOE's "Office of Enterprise Assessment's National Training Center (NTC) located on Kirtland Air Force Base in Albuquerque, New Mexico."  ECF No. 40-2 at 67.  Services include "developing, providing and supporting security and safety classroom and on-line training at the NTC and other locations, managing training programs, providing cyber-security and information technology support for the NTC as well as at DOE Headquarters in Washington, D.C., and maintaining the facilities and grounds."  Id. at 67-68.  The solicitation for this five-year Indefinite Delivery Indefinite Quantity (IDIQ) contract issued on June 23, 2017, id. at 67, with a closing date for receipt of proposals of August 16, 2017, id. at 264.

Any attempted modification of a proposal received after August 16, 2017, would be deemed "late" and would not be considered by the DOE.  Id. at 267.  The DOE informed the offerors that the agency intended to award the contract without discussions. Id. at 268.  For this protest, the most pertinent evaluation criteria were the resume and letter of commitment that each offeror would include to identify the person who would serve as General Manager for the services performed under the contract.  Id. at 273. Notably, offerors were informed that

> **FAILURE TO SUBMIT A LETTER OF COMMITMENT** [from the person to serve as General Manager] **MAY RESULT IN THE OFFEROR'S PROPOSAL BEING ELIMINATED FROM FURTHER CONSIDERATION FOR AWARD FOR FAILURE TO SUBMIT A RESPONSIVE, COMPLETE AND ACCEPTABLE PROPOSAL.**

---

[3]      The court notes that plaintiff's memorandum in support of its motion for judgment on the AR, see ECF No. 50-1, is largely founded on citations to the exhibits in plaintiff's appendix filed earlier in this litigation, ECF No. 3-1, or to defendant's supplemental appendix filed during that earlier phase of litigation, ECF No. 26-2, rather than on citations to the certified administrative record filed by the agency, ECF Nos. 40, 49-1. This practice violates RCFC 52.1(c)(1) and is unhelpful to the court.  Plaintiff's motion for judgment on the AR was filed more than a month after all parts of the AR had been filed by defendant--there was ample time to update any existing page citations to the corresponding pages of the AR.

Id. (emphasis in original).

B.    Offerors

Five offerors responded to the solicitation.  ECF No. 40-4 at 216.  Among the offerors were plaintiff, Chenega Healthcare Services, LLC (Chenega or CHS), and Kupono Government Services, LLC (Kupono), the intervenor-defendant in this suit. Kupono's proposal was selected for award.

Chenega's "sister companies," other wholly-owned subsidiaries of Chenega Corporation, had performed on predecessor contracts at NTC for some years.  ECF No. 34 at 3.  Indeed, one of these sister companies was the incumbent contractor at NTC at the time of contract award.  Id.  When Chenega submitted its offer for this procurement, it proposed that Mr. Mark Russell--the General Manager who was serving in that capacity for the incumbent contractor at the time--continue in that role, and included Mr. Russell's resume and letter of commitment in its proposal.  Id. at 4; ECF No. 40-3 at 271, 292-94.

C.    Chenega Informs the DOE that Mr. Russell Cannot Commit to the Contract

While the agency was considering the five proposals it had received, Mr. Russell developed a medical condition.  ECF No. 34 at 5.  Chenega informed the DOE that it would need to replace Mr. Russell in the proposal under consideration.  Id.  Mr. Mark Miller was substituted as General Manager on the incumbent contract, and Chenega informed the DOE that it "intended to substitute" Mr. Miller for Mr. Russell in its proposal, as well.  Id.

D.    The DOE Rates Chenega's Proposal as Unsatisfactory and Awards the Contract to Kupono

The DOE subsequently inquired whether Mr. Russell's commitment letter was still valid for Chenega's proposal, but did not permit Chenega to provide any other information.  ECF No. 40-4 at 33-34.  Chenega confirmed that Mr. Russell's letter of commitment was no longer valid.  Id. at 33.  Although Chenega's offer and Kupono's offer received similar ratings for most of the non-price aspects of their proposals, the lack of a valid letter of commitment from a General Manager rendered Chenega's technical approach unsatisfactory.  ECF No. 40-4 at 255, 257, 266-67.  Even though Chenega offered a lower price, the technical approach factor weighed heavily against Chenega, and the DOE concluded that Kupono offered the best value to the agency.  Id. at 272-74.

E.    Protest History

The contract award to Kupono was protested by Chenega before the Government Accountability Office (GAO).  See Chenega Healthcare Servs., LLC, B-416158, 2018 CPD ¶ 200, 2018 WL 3047041 (Comp. Gen. June 4, 2018) (CHS).  Most pertinent here, the GAO found that the DOE was not obliged to enter into discussions with Chenega

regarding the proposed substitution of Mr. Miller for Mr. Russell.  CHS, 2018 WL 3047041, at *5.  Chenega's GAO protest was denied on June 4, 2018.  Id. at *1.

Chenega filed suit in this court on June 18, 2018.  An expedited briefing schedule for plaintiff's request for a preliminary injunction was established by the court.  The court's decision on that motion issued on July 13, 2018.  See Chenega Healthcare Servs., LLC v. United States, 138 Fed. Cl. 644 (2018) (Chenega I).

Most pertinent here, the court agreed with the GAO that the agency was not required to enter into discussions with Chenega regarding the proposed substitution of Mr. Miller for Mr. Russell.  Id. at 652-53.  Also relevant here, the court did not agree with plaintiff's contention that the DOE's award decision was inadequately explained.  Id. at 655.  For these reasons, among others, the court denied plaintiff's request for a preliminary injunction.  Id. at 657.

The parties were offered an opportunity to consider whether further litigation of this protest was required.  An AR was filed and later supplemented.  A briefing schedule for cross-motions for judgment on the AR was proposed by the parties and adopted by the court.  See ECF Nos. 46-47.  Once that briefing schedule was complete, plaintiff sought leave to submit an additional declaration by a senior Chenega contract manager.  The court agreed to consider the supplemental declaration of LeAnn Herren, ECF No. 62, not as a supplement to the AR, but as supplemental evidence.  Order of October 23, 2018, ECF No. 61 at 1-2.

## II.   Legal Standards

### A.   Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]:  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure.  Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief.  Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v.

United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)).  The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question. Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)). Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citation omitted).

"'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'"  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

B.     Permanent Injunctive Relief

As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a court considers:  (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).

III.    Analysis

Plaintiff has limited its arguments for judgment on the AR to those presented in Counts III and IV[4] of its amended complaint.  ECF No. 50-1 at 9 n.1.  As framed by plaintiff, three questions are before the court:

---

[4]     Of the five counts in the amended complaint, two are identified as Count IV.  See ECF No. 34 at 11-12.  Plaintiff's reference here is to the first of the Count IVs.

1.      Whether DOE abused its discretion in deciding not to hold discussions with CHS concerning the identity and qualifications of the replacement general manager, despite CHS's proposal being otherwise technically superior and less expensive than the awardee's proposal?

2.      Whether, despite the broad discretion afforded to agencies under such circumstances, the Court must still determine whether DOE provided a coherent and reasonable explanation of its exercise of discretion[?]

3.      Whether DOE identified a rational basis for its decision not to hold discussions with CHS to the extent required under [the] Administrative Procedure Act?

Id. at 9.  Defendant frames the dispute quite differently, inquiring whether the DOE "reasonably declined to open discussions" before contract award.  ECF No. 53 at 6.  The court does not find the parties' framing of the issues particularly helpful, and instead pursues two inquiries:  (1) Did the DOE abuse its discretion by not opening discussions with Chenega?; and, (2) Did the DOE inadequately document the rationale for its award decision?

The court notes, at the outset, that these two questions were answered in Chenega I five months ago.  Nothing in the AR and its supplement, or the declarations submitted by the parties, or the renewed arguments brought by the parties in six separate briefs, alters the analysis conducted by the court at that time.  Although plaintiff argues that both the GAO and this court in Chenega I erred when reviewing this contract award, see ECF No. 50-1 at 24-25 & n.4, 30 n.6, the court cannot agree.

Further, to the extent that plaintiff relies on two decisions of this court to discern a rule of law applicable to this bid protest, those cases provide no persuasive guidance and, in any case, do not provide binding precedent.[5]  Cf. W. Coast Gen. Corp. v. Dalton, 39

---

Defendant contends that all arguments in counts of the amended complaint that were not addressed in plaintiff's motion for judgment on the AR are waived.  ECF No. 53 at 11 n.2.  Plaintiff does not contest the issue of waiver.  The court agrees with the government that Chenega has waived reliance on any counts of the complaint not addressed by plaintiff's dispositive motion.

[5]      Plaintiff extensively relies on Ernst & Young, LLP v. United States, 136 Fed. Cl. 475 (2018), and Day & Zimmerman Servs. v. United States, 38 Fed. Cl. 591 (1997), two bid protest decisions of this court.  The facts of these cases are distinguishable from the

F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted).  Most helpful to the court are decisions from the Federal Circuit which address bid protest scenarios, which, together, form a substantial body of guidance for the resolution of bid protests before this court.  As a general rule, therefore, the parties' citations to non-binding precedent are not discussed in this opinion because binding precedent guides the court's analysis.

Familiarity with the court's analysis in <u>Chenega I</u> is presumed.  The court turns now to the question of whether the DOE abused its discretion by not opening discussions with Chenega when the agency learned of the proposed substitution of Mr. Miller for Mr. Russell.[6]

A.    Award without Discussions

As the GAO stated, when an offeror is obliged to make a change in the key personnel included in its proposal, after that proposal has been submitted and the deadline for proposals has passed, the agency has a choice between evaluating the original proposal as submitted, or opening discussions to allow for modified proposals.  See <u>CHS</u>, 2018 WL 3047041, at *3 n.2 ("When the agency is notified of the withdrawal of a key person, it has two options:  either evaluate the proposal as submitted, where the proposal would be rejected as technically unacceptable for failing to meet a material requirement, or open discussions to permit the offeror to amend its proposal.") (citing <u>Gen. Revenue Corp.</u>, B-414220.2, 2017 CPD ¶ 106, 2017 WL 2130370, at *17 (Comp. Gen. Mar. 27, 2017)).  Chenega disagrees with the GAO's summary of the options afforded the procuring agency, although plaintiff's disagreement is largely, in the court's view, a disagreement with competitive fairness policies embodied in the Federal Acquisition Regulation (FAR).  See ECF No. 50-1 at 24-26 (expressing a preference for a procurement system where substitutions of key personnel could be accomplished more easily after the deadline for proposal submissions has passed).

Plaintiff, like the GAO, notes that one option in such circumstances is for the agency to open discussions with all offerors to allow for amended proposals.  <u>Id.</u> at 22-23

_____

instant protest, and to the extent that the standard of review in either decision conflicts with binding precedent, these cases cannot guide the court's decision here.

[6]    Although the court has considered the supplemental declaration of LeAnn Herren, ECF No. 62, that document merely indicates that Kupono, like plaintiff, was obliged to make a key personnel substitution.  Kupono's key personnel substitution occurred, however, after contract award, and is thus irrelevant to the court's review of the DOE's award decision.  <u>E.g.</u>, <u>Precision Standard, Inc. v. United States</u>, 69 Fed. Cl. 738, 745 n.6 (2006), <u>aff'd</u>, 228 F. App'x 980 (Fed. Cir. 2007).

(citation omitted).  Plaintiff also concedes that in such circumstances, an agency "is permitted to potentially award the contract without discussions," on the basis of the proposals that were timely submitted by the offerors.  ECF No. 55 at 8 (emphasis added).  Plaintiff argues, however, that an agency's discretion to not open discussions to address a proposed key personnel substitution is limited, especially in a best value procurement.[7]  ECF No. 50-1 at 26-27.

This court's standard of review in bid protests, however, is highly deferential.  Advanced Data Concepts, 216 F.3d at 1058.  The court does not agree that, in general, it is an abuse of discretion for an agency to award without discussions, where the intent to award without discussions is noticed in the solicitation, and where, in the context of a best value procurement, a lower-cost proposal might be rendered superior to the awardee's proposal if the offeror were afforded the opportunity to substitute key personnel.  The offerors were on notice in this procurement that the General Manager's letter of commitment could be determinative, and that the agency planned to award without discussions.  Thus, "any post-submission key personnel change ran the risk of rendering the offeror's proposal unacceptable, with no opportunity to cure the defect during discussions."  Chenega I, 138 Fed. Cl. at 652.  This risk applied to all offerors, equally, and it was not an abuse of discretion for the contracting officer to treat all offerors the same in this regard.

Contracting officers generally have broad discretion regarding whether or not to engage in discussions with offerors before award.  See, e.g., Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1327-29 (Fed. Cir. 2011) (holding that solicitation language indicating that any discussions would be held at the discretion of the contracting officer signified that the agency was not required to engage in discussions before disqualifying the protestor's proposal).  Although the agency's discretion is not unlimited, see JWK Int'l Corp. v. United States, 279 F.3d 985, 988 (Fed. Cir. 2002) (citation omitted), the DOE's conduct here falls well within a reasonable exercise of discretion.  Plaintiff's bid protest cannot be sustained on this ground.

B.      Adequate Explanation of Agency's Award Rationale

---

[7]      The court discussed, at some length, plaintiff's contentions regarding best value procurements in Chenega I.  138 Fed. Cl. at 653-55.  As previously stated, "[i]n essence, plaintiff's challenge to the agency's best value decision asks the court to supplement the evaluation scheme set forth in the solicitation with a further requirement that the agency open discussions when an offeror's candidate for the General Manager position retracts its commitment to the proposed contract."  Id. at 654.  The court continues to believe that plaintiff's view of the law fails to give adequate deference to the contracting officer's role in managing this procurement.

The standard of review in bid protests requires that the agency provide a rational explanation for its award decision.  This rule is well-established.  Here is one formulation of the rule:

> Contracting officers are given broad discretion in their evaluation of bids, E.W. Bliss Company v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996), and when an officer[']s decision is reasonable a court may not substitute its judgment for that of the agency, Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir. 1995).

R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003).

Plaintiff proposes an entirely different standard of review.  According to plaintiff, the agency's decision to award without discussions, rather than the agency's decision to award the contract to Kupono after evaluating the proposals before it, must be supported by a clearly stated rationale in the AR.  ECF No. 50-1 at 28-33 & n.6; ECF No. 55 at 5-7.  Plaintiff's standard of review is predicated on an inaccurate interpretation of two Federal Circuit decisions:  In re Sang-Su Lee, 277 F.3d 1338 (Fed. Cir. 2002) (Sang-Su Lee), and Impresa.

Sang-Su Lee addresses the standard of review for decisions issued by tribunals of the United States Patent and Trademark Office (PTO), not contract award decisions by procuring agencies.  277 F.3d at 1342.  Thus, the only value of Sang-Su Lee here is in its articulation of a general standard of review for courts that review administrative decisions of executive agencies.  See id. (stating that decisions of tribunals of the PTO "receive the same judicial deference as do tribunals of other administrative agencies") (citation omitted).  There is nothing unusual, however, in the articulation of this standard of review in Sang-Su Lee:

> For judicial review to be meaningfully achieved within these strictures, the agency tribunal must present a full and reasoned explanation of its decision.  The agency tribunal must set forth its findings and the grounds thereof, as supported by the agency record, and explain its application of the law to the found facts. . . .  This standard requires that the agency not only have reached a sound decision, but have articulated the reasons for that decision.  The reviewing court is thus enabled to perform meaningful review within the strictures of the [Administrative Procedure Act], for the court will have a basis on which to determine "whether the decision was based on the relevant factors and whether there has been a clear error of judgment."

Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).

The AR in this case presents a rational explanation for the DOE's award to Kupono.  ECF No. 40-4 at 246-74.  As noted in Chenega I,

> the agency properly considered the information before it in five proposals, and selected the best value proposal in accordance with the evaluation criteria set forth in the solicitation.  DOE's rationale for making its best value decision is adequately documented, and shows that the agency did not stray from the evaluation factors set forth in the solicitation.

138 Fed. Cl. at 655.  Plaintiff has not shown how the agency's decision in this case fails to survive the standard of review articulated in Sang-Su Lee.

Plaintiff's reliance on Impresa is similarly misplaced.  Plaintiff construes Impresa to require that an AR supply an articulated rationale for every discretionary act that could possibly be relevant to the contract award decision.  ECF No. 50-1 at 18; ECF No. 55 at 13.  Under the unique circumstances of Impresa, which was deemed a "rare case[]" by the Federal Circuit, an explanation of the contracting officer's responsibility determination was required to permit "meaningful judicial review."  238 F.3d at 1338.  Here, where the agency stated its intent to award without discussions, meaningful judicial review is possible even where the AR contains no specific articulation of the rationale behind the agency's decision to not open discussions with the offerors in this procurement.

As defendant argues, "[t]he requirement to provide a 'coherent and reasonable' explanation applies to the award determination, not to any arguable exercise of discretion in which the agency might engage along the way to issuing a contract."  ECF No. 57 at 4 (citations omitted).  The DOE's award decision, and the rationale for that award decision, are adequately documented, for the reasons previously articulated in Chenega I. See 138 Fed. Cl. at 655.  The court cannot sustain plaintiff's protest on this ground.

C.     Permanent Injunctive Relief Not Warranted

Plaintiff has not succeeded on the merits of its protest.  "Because proving success on the merits is a necessary element for a permanent injunction," Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 999 (Fed. Cir. 2018), no injunctive relief is warranted in this case.  This protest must be dismissed.

IV.     Conclusion

Accordingly,

(1)     Plaintiff's motion for judgment on the AR, ECF No. 50, is **DENIED**;

(2)     Intervenor-defendant's cross-motion for judgment on the AR, ECF No. 52, is **GRANTED**;

(3)     Defendant's cross-motion for judgment on the AR, ECF No. 53, is **GRANTED**;

(4)     The clerk's office is directed to **ENTER** final judgment for defendant and intervenor-defendant, **DISMISSING** plaintiff's amended complaint, with prejudice; and,

(5)     On or before **January 16, 2019**, the parties shall **CONFER** and **FILE** a **Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge